**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID A. MACK,** : | |
| : | |
| **Plaintiff** : | |
| : | **CIVIL NO. 3:CV-13-2919** |
| v. : | |
| : | **(Judge Caputo)** |
| **JOHN E. WETZEL,** *et al.*, : | |
| : | |
| **Defendants** : | |
| : | |

**M E M O R A N D U M**

**I.   Introduction**

David Mack, proceeding *pro se* and *in forma pauperis,* was a prisoner at the State Correctional Institution in Frackville (SCI-Frackville), Pennsylvania, when he brought this action under 42 U.S.C. § 1983 alleging violations of his rights under the First, Eighth and Fourteenth Amendments and Pennsylvania's Clean Indoor Act (Act), 35 PA. CONS. STAT. § 637.1 - 637.11.[1]

Presently before the court is the Department of Corrections (DOC) defendants' motion for summary judgment based on Mr. Mack's alleged failure to exhaust his available administrative remedies prior to initiating this action.  (Doc. 36.)  Mr. Mack has filed a brief in opposition to defendants' motion.  (Doc. 61.)  For the reasons that follow, defendants' motion for summary judgment will be granted and the case dismissed without prejudice.

---

[1] On May 18, 2015, Mr. Mack notified the court of his release from prison to a community corrections center in Philadelphia, Pennsylvania.  *See* Doc. 70.

## II.     Standard of Review

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." *MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).  In reviewing a motion for summary judgment, the court must view all facts and draw all reasonable inferences "in the light most favorable to the party opposing the motion." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)(internal quotation marks omitted).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 2509 - 10, 91 L.Ed.2d 202 (1986).  An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. *Id*. at 248, 106 S.Ct. at 2510. A material fact is any fact that might affect the outcome of a suit under the governing substantive law. *Gonzalez v. Sec'y of Dept. of Homeland Sec.,* 678 F.3d 254, 261 (3d Cir. 2012).

"[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact." *Blunt,* 767 F.3d at 265. Although the court must give the non-moving party the benefit of reasonable inferences, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (internal quotation marks omitted).  The non-moving party "cannot establish a genuine dispute as to a material fact by pointing to unsupported allegations in the pleadings." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004)(quoting *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2510).

## III.    Background

### A.    Procedural History

At all times relevant to this action, Mr. Mack was housed at SCI-Frackville. He initiated this action on November 17, 2013, in the Eastern District of Pennsylvania.  (Doc. 1-2, Compl.)  As SCI-Frackville is within the Middle District of

Pennsylvania, the matter was transferred to this court on December 2, 2013.  (Doc. 4, Transfer Order.)

On December 11, 2013, Mr. Mack sought leave to file an amended complaint.  (Doc. 7, Mot. to Am.)  On December 20, 2013, this court granted Mr. Mack's motion.  (Doc. 8, Order.)  He filed his Amended Complaint on January 14, 2014.  (Doc. 9, Am. Compl.)  On March 28, 2014, the court directed service of the Amended Complaint on the named defendants.  (Doc. 13, Service Order.)

On July 8, 2014, the DOC defendants filed a motion for summary judgment, statement of material facts, exhibits and a supporting brief.  (Docs. 36 - 39.)  On November 10, 2014, Mr. Mack filed a brief in opposition to the DOC defendants' motion for summary judgment and supporting exhibits.  (Doc. 61.)

### B.  Allegations of the Amended Complaint

Mr. Mack, an asthmatic, alleges defendants acted with cruel and unusual punishment when they exposed him to unhealthy levels of environmental tobacco smoke (ETS), housed him with inmates that smoked cigarettes, and failed to transfer him to a different cell after his cellmate (whom he reported for smoking in their cell) became hostile towards him.  He claims the defendants' actions were taken in retaliation for his filing of grievances against non-defendant corrections staff and because of his non-respiratory medical conditions.  He complains his asthma condition and mental health suffered as a result of his exposure to ETS.

Originally, Mr. Mack named nineteen defendants. Following a series of voluntary dismissal by Mr. Mack,[2] the following six SCI-Frackville employees remain named as defendants: Superintendent Brenda Tritt; Corrections Health Care Administrator (CHCA) Vicki Stanishefski; Unit Manager Pete Damiter; Sgt. Hubiak; Sgt. Reed and Correction Officer (CO) Troutman.

### C.   Undisputed Facts[3]

On the basis of the pleadings and the expanded record, and specifically on the portions of the record which comply with the requirements of Fed. R. Civ. P. 56(c), the following facts, construed in a manner most favorable to Mr. Mack as the non-movant, are undisputed for purposes of the motion for summary judgment.

Each DOC inmate receives a copy of the DOC's Inmate Handbook. The DOC has an Inmate Grievance System policy which appears in the DOC's Inmate Handbook and provides them notice of the grievance policy and the requirements the policy. (Doc. 37, Defs.' Statement of Material Facts (DSMF), ¶¶ 7 - 8.) The purpose of the Grievance System policy is to establish procedures for the review of inmate grievances and ensure that inmates have an avenue though which resolution of specific problems can be sought. (DSMF ¶ 9.) A "grievance" is defined by the

---

[2] *See* Docs. 45, 47, 57, 60, 63 and 71.

[3] Although Mr. Mack filed a statement of undisputed facts in support of his opposition brief it does not comply with the requirements of Pa. M.D. Local Rule 56.1 as it does not address, correspond to, or reference the defendants' statement of material facts. *Compare* Docs. 37 and 68. However, given Mr. Mack's *pro se* status, where the court finds relevant material facts in dispute set forth in Mr. Mack's statement, they will be noted. Otherwise, the defendants' statement of material facts, where properly supported, are deemed admitted. *See* Pa. M.D. LR 56.1.

policy as "[a] formal written complaint by an inmate related to a problem encounter[ed] during the course of his or her confinement."  (DSMF ¶ 10.)  The grievance policy is designed as a more formal resolution of an inmate's issues or concerns, and inmates are encouraged to first try informal avenues, such as communicating with the staff at his or her institution prior to filing a grievance, so their concern can be quickly resolved.  (DSMF ¶ 12.)  If informal resolution fails, the Grievance System provides a three step process for resolution of inmate grievances: (1) the initial grievance and staff response; (2) the appeal to the Superintendent and response; and (3) the final appeal to the Secretary's Office of Inmate Grievances and Appeals (SOIGA) and response.  (DSMF ¶ 13.)  An appeal to SOIGA is the final level of appeal from a grievance under the Department's Grievance System policy.  (DSMF ¶ 16.)

   Mr. Mack initiated this action on November 17, 2013.  (Doc. 1-2, Compl.)  He filed an Amended Complaint on January 14, 2014.  (Doc. 9, Am. Compl.)

   Between November 22, 2011 and February 18, 2014, Mr. Mack filed sixteen grievances.  (DSMF ¶ 30-31.)  He pursued only three of them to final review with SOIGA.  (DSMF ¶ 32.)  The grievances that reached final review are 475116, 486529 and 487790.  (DSMF ¶ 33.)  Grievance 475116 was filed on or about August 27, 2013, against "the entire C/Block staff & employees," including defendant Hubiak.  (Doc. 38-4, ECF p. 7 and Doc. 61-3.)  It concerned Mr. Mack's exposure to ETS on the housing unit, his cell assignment with an inmate who smokes cigarettes, and his cellmate's negative reaction to Mr. Mack after he informed prison staff that his cellmate was smoking in their cell.  (*Id*., ECF p. 7; Doc. 61-3; *see also* DSMF ¶

34.)  SOIGA upheld the initial response, denying the grievance on December 9, 2013.  (Doc. 9, Am. Compl., ¶ 96; DSMF ¶ 34; Doc. 61-3, ECF p. 20.)

Grievance 486529 was filed on November 19, 2013.  (Doc. 61-12, ECF pp. 23-25.)  This grievance addresses Mr. Mack's assertion that prison staff, including defendant Damiter, were retaliating against him by housing him with inmates who smoke and exposing him to continued physical harm due to ETS in his housing unit.  (*Id*.)  Mr. Mack's appeal of this grievance was pending review before SOIGA when he filed his Amended Complaint.  (Doc. 9, ¶ 99.)  On April 14, 2014, the denial of this grievance was upheld by SOIGA.  (Doc. 61-12, ECF p. 42; Doc. 38-5, ECF p. 2.)

Mr. Mack filed grievance 487790 on November 27, 2013.  (Doc. 61-12, ECF p. 3.)  It was filed against CO Troutman and Sgt. Reed.  (*Id*.)  Mr. Mack states that upon returning to his cell that day, his cellmate lit a cigarette and started smoking it.  (*Id*., ECF p. 4.)  Mr. Mack left the cell and reported this incident to CO Troutman.  CO Troutman went to Mr. Mack's cell, saw the cellmate smoking, and told him to "put it out".  CO Troutman then returned to where Mr. Mack was waiting and told him he would receive a misconduct for refusing to "lock in" his cell.  Mr. Mack believes CO Troutman and Sgt. Reed issued him the bogus misconduct in retaliation for his non-respiratory medical conditions.  As relief, he asked to be housed with an inmate who does not smoke and to be transferred to a facility that does not sell tobacco products.  (*Id*., ECF pp. 4-5.)  At the time of filing his Amended Complaint, Mr. Mack acknowledged that his grievance appeal was pending.  (Doc. 9, ¶ 100.)  A final

review decision as to this grievance was issued on May 22, 2014.  (*Id.*, ECF p. 2; Doc. 61-12, ECF p. 21.)

## IV. Discussion

### 1. Administrative Exhaustion

The remaining DOC defendants (Tritt, Stanishefski, Damiter, Jr., Hubiak, Reed and Troutman) argue that they are entitled to entry of summary judgment on the grounds that Mr. Mack failed to properly exhaust his available administrative remedies.  (Doc. 39, Defs.' Br. in Support Mot. Summ. J., ECF p. 5.)

Under the PLRA, before a prisoner may bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he must exhaust all available administrative remedies.  *See* 42 U.S.C. § 1997e; *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.C. 983, 988, 152 L.Ed.2d 12 (2002).  There is no "futility" exception to the administrative exhaustion requirement.  *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002)(citing *Nyhuis v. Reno*, 204 F.3d 65, 78 (3d Cir. 2000)).  The exhaustion requirement of the PLRA is one of "proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006).  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in the procedural default of a claim.  *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).  Dismissal of an inmate's claim is appropriate when the prisoner has failed to exhaust his available administrative remedies before bringing a civil-rights action.  *Oriakhi v. United States*, 165 F. App'x 991, 993  (3d

Cir. 2006)(per curiam)(nonprecedential)(citing *Ahmed*, 297 F.3d at 209 & n. 9)("Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court.")  Furthermore, the filing of an amended complaint after an unexhausted claim is presented to the court does not cure the infirmity.  *See Ahmed*, 297 F.3d at 209 (holding that "[w]hatever the parameters of 'substantial compliance' referred to there, it does not encompass a second-step appeal five months late nor the filing of a suit before administrative exhaustion, however late, has been completed.  It follows that Ahmed cannot cure the defect in his action by the proffered amendment of the complaint.") Finally, the PLRA exhaustion requirement does not apply to prisoners who file a timely complaint after release from prison, but does apply to prisoners who file a complaint while in prison and are subsequently released.  *Id*., 297 F.3d at 210.

In this case, the uncontradicted evidence presented reveals that Mr. Mack filed this action prior to fully exhausting his administrative remedies as to any of the matters set forth in the Amended Complaint.  It is undisputed that Mr. Mack initiated this action on or about November 17, 2013 in the Eastern District of Pennsylvania. (Doc. 1-2, Compl.)  His Amended Complaint was filed on January 14, 2014.  (Doc. 9, Am. Compl.)  Mr. Mack has identified the grievances upon which his action is based.  He sets forth in his Amended Complaint the dates he filed the relevant grievances.  He states that the first grievance, 475116, was not fully exhausted until December 9, 2013, when SOIGA issued its decision.  (Doc. 9, Am. Compl., ¶ 96; DSMF ¶ 34; Doc. 61-3, ECF p. 20.)  Clearly, SOIGA's decision came after the filing

of his original Complaint in November 2013.  The fact that Mr. Mack completed the grievance process for this administrative remedy underscores the availability of that remedy to him at the time he filed his Complaint.  Additionally, the fact that Mr. Mack fully exhausted his administrative remedies as to grievance 475116 at the time he filed his Amended Complaint is of no import.  As noted in *Ahmed*, *supra*, the filing of the Amended Complaint, does not cure his original failure to exhaust his administrative remedies prior to filing this action.  As for the remaining two grievances, Mr. Mack admits that his appeals of these grievances were pending at the time he filed his Amended Complaint.  The undisputed summary judgment record reveals that they too were eventually fully exhausted via the DOC's grievance policy.  However, they too were properly exhausted after he filed his Amended Complaint.

While Mr. Mack may desire the court to examine the underlying factual disputes as to his exposure to ETS, its impact on his physical and psychological well-being, retaliation by various prison officials, and other alleged constitutional violations, the court cannot reach the merits of these issues due to Mr. Mack's failure to exhaust his available administrative remedies as to these claims.  To the extent Mr. Mack argues that he filed other grievances, that he abandoned prior to final review, because "official misconduct influenced him from not continuing the grievance process," he offers no proof of defendants' alleged interference.  Moreover, his successful completion of the grievance process as to his other grievances undercuts his otherwise unsupported claim of defendants' interference with the exhaustion process.  The fact that Mr. Mack was distraught and distracted

by his mother's decline in health, and eventual death, is sad and unfortunate, but clearly does not demonstrate prison officials interference with his access of the grievance system. *See* Doc. 61, Pl.'s Summ. J. Opp'n Br. ECF p. 3. Likewise the court is unpersuaded by Mr. Mack's unsupported argument that he failed to exhaust his administrative remedies as to other grievances filed because he believed "he would have been discriminated against in the job." (*Id.*) He has not come forward with any evidence to suggest that defendants leveraged his prison employment as a means to manipulate his use of the grievance system. Finally, the court notes that in his original Complaint Mr. Mack asserted that he filed his relevant grievance on August 27, 2013 (grievance 475116), and that "2nd level appeal was never responded to ... There were no other channels to take ... Chief grievance coordinator failed to respond as did the secretary of Corrections." (Doc. 5, Compl.) Given Mr. Mack's ultimate exhaustion of this grievance to final review makes these statements either untrue or prematurely made on the part of Mr. Mack. Regardless, in light of the undisputed record before the court, Mr. Mack's claims against the remaining defendants are administratively unexhausted, and thus entry of summary judgment is appropriate.

### 2. Supplemental Jurisdiction

In accordance with the jurisdictional statute, 28 U.S.C. § 1367, federal courts may decline to exercise supplemental jurisdiction over a state law claim if the court has dismissed all claims over which it has original jurisdiction. *See Ass'n New*

*Jersey Rifle and Pistol Clubs v. Governor of New Jersey*, 707 F.3d 238, 241 (3d Cir. 2013) ("Because we affirm [the district court's] dismissal of the federal claims, we hold that the Court properly declined jurisdiction over the state law claims.")

In light of this court's determination that the defendants are entitled to entry of summary judgment with respect to Mr. Mack's federal claims on the basis of non-exhaustion, jurisdiction will be declined with respect to any pendent state law claims against them.

An appropriate Order follows.

                                               **/s/ A. Richard Caputo**
                                               **A. RICHARD CAPUTO**
                                               **United States District Judge**

**Date: July 27    , 2015**